**UNITED STATES**

v.

**Technical Sergeant Matthew J. SOUSA,
United States Air Force**

**ACM 37889**

U.S. Air Force Court of Criminal Appeals

Sentence adjudged 8 January 2011
by GCM convened at Eielson
Air Force Base, Alaska.

30 May 2013

Military Judge: Jeffrey A. Ferguson.

Appellate Counsel for the appellant: Captain Shane A. McCammon and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Linell A. Letendre; Major Lauren N. DiDomenico; Major Daniel J. Breen; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before STONE, GREGORY, and SANTORO, Appellate Military Judges

## OPINION OF THE COURT

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of forcible sodomy against his then-wife, DS, in violation of Article 125, UCMJ, 10 U.S.C. § 925. The adjudged and approved sentence was a bad-conduct discharge, confinement for 2 years, and reduction to E–1. On appeal, the appellant asserts that the military judge erred by (a) excluding the contents of a DVD contain-

ing evidence of sexual contact between the appellant and the victim, pursuant to Mil. R. Evid. 412, and (b) failing to instruct on consensual sodomy as a lesser-included offense. We affirm.

*Background*

The prosecution's case consisted entirely of the testimony of the appellant's former wives, DS and BS. DS testified that she met the appellant in July 2005, they married in October 2005, and they divorced in March 2008. The appellant became more emotionally and sexually controlling as the marriage progressed. Beginning on the day they met and continuing into approximately February 2007, the appellant and DS engaged in consensual sexual activity consisting of vaginal, oral, and anal intercourse an average of three to four times per week. Several, but not all, of those encounters were videotaped. DS alleged that during one of their sexual encounters in November 2006—while she was pregnant and that was not recorded—the appellant forcibly sodomized her as she cried, tried to push him off, and told him to stop. After the encounter, when the appellant found DS in the bathroom bleeding, he told her that just as Christ bled for her, she should be willing to bleed a little bit for her husband. It was this incident that served as the basis for the charge of forcible sodomy in this case.

BS, the appellant's first wife, testified that she and the appellant married in 1995 after dating for three months. BS described the appellant as being very nice initially, but, as the marriage progressed, he would tell her that she needed to be submissive to him and that her job was to raise their son, clean the house, cook his meals, and do "wifely duties." He would make negative comments about her appearance, her weight, and the length of her hair. She also testified that the appellant enjoyed videotaping their sexual encounters and told her he expected her to engage in anal sodomy.

Because one of BS' sons with the appellant was living with him and DS, DS and BS spoke regularly during the course of DS's marriage to the appellant. As DS's relationship with the appellant deteriorated, DS told BS that she and the appellant were having financial problems, he was drinking excessively, and going out without her. BS told DS that she had experienced similar issues.

In early 2010, DS received an e-mail from the appellant's then-girlfriend. The girlfriend told DS that she had seen DS's "sex tape" with her ex-husband, and it included a scene of what the girlfriend said was forced anal sex. DS confronted the appellant, who admitted that he had retained copies of the recordings.

DS went first to the appellant's first sergeant, then later to the Air Force Office of Special Investigations (OSI), in an attempt to recover the original recordings. DS later called BS and told her that the appellant had forced her to engage in anal sex while she was pregnant. BS told DS that he had done the same thing to her. DS told BS that she had made a formal complaint to OSI and had given them BS's name and contact information.

BS ultimately testified that, during one of their sexual encounters in November 1997—while she was pregnant—the appellant forcibly sodomized her as she told him to stop, told him he was hurting her, and pushed him to try to get him off her. She did not report this incident to anyone at the time.

Additional facts necessary to resolve the assigned error are discussed below.

*I. Exclusion of the DVD*

The appellant's girlfriend eventually gave DS a DVD copy of the "sex tape." DS watched it for a few seconds to confirm that it depicted her and then gave it to OSI. The single act of forcible sodomy at issue in this trial is not recorded on the DVD.

Trial defense counsel sought to introduce the DVD and testimony about the sexual activity between the appellant and DS to demonstrate consent and mistake of fact as to consent. The issue was first addressed in a pretrial motion and ruling (hereafter the "pretrial ruling") and then again in a subsequent motion to reconsider after DS's direct examination (hereafter the "motion to reconsider").

## A. Pretrial Ruling

After hearing testimony at a pretrial session, pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), and viewing the contents of the DVD, the military judge made extensive findings of fact and conclusions of law. He ultimately allowed testimony about the existence and contents of the DVD but did not allow introduction of the DVD itself. We will discuss more fully the military judge's findings of fact and conclusions of law below.

## B. Direct Examination of DS

Trial began with the direct examination of DS. She testified that she and the appellant began experiencing problems shortly after getting married. DS had previously been married three times and was initially attracted to the appellant, in part, because of his religious nature. After they married, the appellant began drinking excessively and became more sexually demanding. DS testified that the appellant frequently used scripture against her, telling her that he was the head of the household, that he was her ruler, and that she was to be subservient to him in every way. He made her quit her job, prohibited her from spending money without his permission, and required that the entire family eat dinners in silence. The appellant threatened her with divorce when she disagreed with him.

DS testified that the appellant also demanded sexual control over her. He told her that her body belonged to him and that God expected her to submit to his every request. He repeatedly recited scripture to support his position. Although prior to marriage the appellant had told DS that he could not be with a woman who would not engage in anal intercourse, his demands in that regard increased after they married. DS testified that the appellant enjoyed taking photographs of her and videotaping their sexual encounters. She testified that she had no interest in the pictures or the recording but did acquiesce to his demands.

DS gave birth to the appellant's daughter in January 2007. Shortly thereafter, the appellant was assigned to Korea. While he was away, DS logged into their shared e-mail account and saw a message from a Korean dating website. She investigated and found that the appellant had created a profile listing himself as a divorced, Christian man seeking a "pretty, laidback girl." Her conclusion that the appellant was committing adultery enabled her to initiate divorce without running afoul of her religious beliefs. Their divorce became final in March 2008, and DS moved to Hill Air Force Base, Utah, where she had been offered a job. Before moving to Hill, DS had asked the appellant for the photographs and recordings he had made of their sexual activity. He gave her an envelope that she thought contained the recordings and the photographs. She destroyed it without looking at the contents.

Her testimony also included the following exchanges with trial counsel:

Q: Could you please tell them [sic] members how you felt about the videotaping?

A: Just the same. I didn't want to do it. He would talk about it and I would object to doing it, and he would again constantly tell me that I was not being a good wife, that I was called to do whatever he wanted, again, that my body didn't belong to me, it belonged to him.

Q: Did you ever do videotaping with the accused?

A: Yes.

Q: And again, why did you?

A: Again, to try and keep him happy. I just figured I would never have to see it or watch it. I felt forced to comply with it.

Q: If you could tell the members, these times that you were videotaped, what were you like on these videotapes?

A: I just tried to smile and I got through it, again, thinking I'll never have to watch it; so, I would just try to put on an act and laugh, try to talk, you know, out of nervousness.

. . . .

Q: Did you make him aware of how you felt about videotaping?

A: Oh, we fought about it all the time.

The following exchange occurred when DS described learning about the DVD's existence from the appellant's girlfriend:

Q: And please explain to the members what is this DVD or how was it explained to you?

A: In an e-mail, she told me that she had a sex tape of me and she described things that were on the tape, so I knew she had seen the tape. (The witness began to cry.) It was my worst fear, the reason I didn't want those things to exist of me.

. . . .

Q: So at this point, how did you feel about it?

A: I didn't know if I'd be able to get that material off the streets. I didn't know who had seen it. Was it being shown to, you know, when he had parties? I mean, I didn't know.

### C. Motion to Reconsider

At the conclusion of DS's direct examination, trial defense counsel asked the military judge to reconsider his ruling excluding the DVD, arguing that the DVD's contents were admissible for all of the reasons cited in their pretrial motion (consent, mistake of fact as to consent, and general impeachment) as well as to impeach DS's testimony about the nature of her relationship with the appellant. Although the military judge engaged in discussion with both sides, he never directly ruled on the motion to reconsider or articulated how, if at all, his pretrial analysis was impacted by DS's trial testimony. Instead, he directed defense counsel to proceed with cross-examination.

### D. Cross–Examination

The cross-examination of DS included the following exchanges:

Q: You believe that Sergeant Sousa made you do things like anal sex and making those videos while you were under complete duress?

A: I would say the arguments before—

Q: You would say that Sergeant Sousa made you do those things while you were under complete duress, didn't you? Didn't you previously tell OSI

that, he worked you to make videos and participate—

A: I believe his coercion was duress, yes.

. . . .

Q: Now, you actually made consensual sex videos with Sergeant Sousa, right?

A: (WIT nodded affirmatively.)

. . . .

Q: And you weren't physically forced to make those tapes, correct?

A: Not physically, no.

Q: And you weren't forced to make those tapes by Sergeant Sousa ... didn't you previously testify at the Article 32 hearing, that you weren't forced to make those tapes by Sergeant Sousa?

A: Yes, I was not forced.

Q: You also testified or said in your statement to OSI that you never wanted anything to do with anal sex, video making, or having pictures taken of you, correct?

A: Yes, I made that clear.

Q: However, you do have a video, as you discussed earlier, out there, where, throughout the whole thing, you're smiling, laughing, dancing around as you described, correct?

A: I was just trying to do what I ... I was just trying to keep him happy.

Q: You're saying that you weren't happy in those tapes yourself?

A: I would say that I smiled through the tape.

Defense counsel questioned DS about one of the final clips on the DVD, asking her whether she inserted the appellant's penis into her anus during an incident of what DS said was consensual sodomy. Although it was not clear whether trial defense counsel sought to impeach DS or refresh her recollection about the incident, the military judge granted the defense's request to show DS the video in a closed session and then resume her cross-examination, telling the members that DS had reviewed the DVD during the closed session. There was no other cross-examination regarding the contents of the DVD.

The defense counsel did not revisit the issue of the admissibility of the DVD during or after the cross-examination. The matter was not discussed again until consideration of findings instructions.

### E. Analysis

■■■■ We review the military judge's ruling on whether to exclude evidence pursuant to Mil. R. Evid. 412 for an abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F.2011). Findings of fact are reviewed under a clearly erroneous standard, and conclusions of law are reviewed de novo. *Id.*

Mil. R. Evid. 412 provides, in pertinent part:

‚ (a) *Evidence generally inadmissible.* The following evidence is not admissible in any proceeding involving an alleged sexual offense except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) *Exceptions.*

(1) In a proceeding, the following evidence is admissible, if otherwise admissible under these rules:

(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

(C) evidence the exclusion of which would violate the constitutional rights of the accused.

The Rule states that when evidence is "relevant" for any purpose under subsection (b), the military judge must determine whether the probative value of such evidence outweighs the danger of unfair prejudice to the victim's privacy. Mil. R. Evid. 412(c)(3).[1] The Rule further states that evidence that passes that test also remains subject to exclusion pursuant to the Mil. R. Evid. 403 balancing test. *Id.*

■■■■ Six months after the appellant's trial, the Court of Appeals for the Armed Forces held that the Mil. R. Evid. 412(c)(3) balancing test could not preclude the admission of evidence "the exclusion of which would violate the constitutional rights of the accused." *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F.2011). Because this case is still on direct review, we apply *Gaddis* retroactively. *See United States v. Harcrow*, 66 M.J. 154, 157–58 (C.A.A.F.2008).

The arguments at trial and on appeal suggested that the parties viewed the DVD's contents as a single, indivisible, item of evidence. We disagree. In analyzing the assigned error, we must consider the contents of the DVD in its component parts, because the relevance and admissibility of each may differ. For example, one of the multiple recorded encounters—or even a portion thereof—may be admissible or inadmissible for reasons unrelated to the other recorded encounters. Additionally, the audible dialog between DS and the appellant may be admissible, whereas the visual images may not.

The appellant argues that the military judge erred in his pretrial ruling because he relied upon the Mil. R. Evid. 412(c)(3) test to exclude the DVD after finding that admission of its contents was constitutionally required and, even when applying the test, used the wrong standard.[2] The Government concedes

---

1. The Mil. R. Evid. 412(c)(3) requirement to consider the alleged victim's privacy interests became effective on 1 October 2007. The Court of Appeals for the Armed Forces had previously held, in *United States v. Banker*, 60 M.J. 216, 223 (C.A.A.F.2004), that prejudice to the alleged victim's privacy interests was part of the constitutional analysis. It is the revised Mil. R. Evid. 412(c)(3) balancing test, not *Banker*, that military judges should have applied after 1 October 2007. *See United States v. Gaddis*, 70 M.J. 248, 254 n. 1 (C.A.A.F.2011).

2. The Mil. R. Evid. 412(c)(3) balancing test purports to allow admission when the probative value "outweighs" the danger of unfair preju-

that, to the extent that the military judge relied on the balancing tests under *Banker* and Mil. R. Evid. 412(c)(3) with regard to constitutionally-required evidence, he abused his discretion. The Government argues, however, that we should independently conduct a Mil. R. Evid. 403 balancing test, even with regard to evidence that is constitutionally required, and find no prejudice.

■ The military judge never explicitly found that admission of "the DVD" was constitutionally required; instead, he held that "the DVD" was *relevant* for purposes that the defense *claimed* fell within Mil. R. Evid. 412(b)(1)(B) or (C). However, not all relevant evidence is constitutionally required: "the probative value of the evidence must be balanced against and outweigh the ordinary countervailing interests reviewed in making a determination as to whether evidence is constitutionally required." *Gaddis,* 70 M.J. at 255. Even relevant evidence remains subject to a Mil. R. Evid. 403 balancing test before it can be deemed constitutionally required.[3] *Id.* at 256. Determining whether evidence is constitutionally required demands a contextual analysis and balancing of interests such as the probative value; the right to expose a witness' motive to testify; the danger of harassment, prejudice, or confusion of the issues; the witness's safety; and whether the evidence may be only marginally relevant. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

■ Nowhere in his pretrial ruling does the military judge reference or appear to apply the Mil. R. Evid. 403 or the *Van Arsdall* balancing test. As that test is a prerequisite for a finding that evidence is constitutionally required, we must review de novo whether any or all of the contents of the DVD were constitutionally required to be admitted. *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000) (when a military judge fails to conduct a Mil. R. Evid. 403 balancing test, we can give his ultimate evidentiary ruling no deference).

■ On de novo review and applying the correct test, we conclude that evidence concerning the existence of the DVD and DS's feelings both about its creation and its contents was constitutionally required on the issue of bias or motive to fabricate. Evidence that DS engaged in consensual sexual activity with the appellant after the date she alleged she was forcibly sodomized was constitutionally required to be admitted on the issue of consent or mistake of fact as to consent. However, the trial testimony placed the facts of the existence of the DVD and the manner in which it was recovered squarely before the members. The military judge also allowed cross-examination, without restriction, about the contents of the DVD. Therefore, we find that the military judge's pretrial ruling did not limit the appellant's opportunity to confront, cross-examine, and present a defense. *See Van Arsdall; Gaddis.* He simply placed restrictions on the manner in which the evidence would be received.

The appellant argued at trial that admission of the contents of the entire DVD was constitutionally required. We disagree. DS repeatedly testified that, although she didn't enjoy anal sex and did so only to please her husband, she engaged in consensual sodomy multiple times during the course of the relationship and even after the November forcible sodomy incident. The issue at trial was whether she declined to participate on one occasion in November 2006, which was not among the video clips on the DVD.

By way of analogy, if the DVD contained 13 clips of consensual vaginal intercourse, and DS had alleged that she was vaginally raped during an encounter that was not recorded and admitted engaging in consensual vaginal intercourse *after* the date she alleges she was raped, no relevant fact of consequence would be made more or less probable

dice. The military judge's test was whether probative value was "far outweighed" by the danger of unfair prejudice.

**3.** In this regard, we note that Mil. R. Evid. 412(c)(3)'s language suggesting that evidence

may be "relevant" under the exception for constitutionally-required evidence is, at best, inartful. Evidence either is or is not constitutionally required. Relevance is but one component of the constitutional analysis.

by allowing the court-martial to watch a recording of the sex acts that were not at issue. Mil. R. Evid. 401. The relevant fact for impeachment would be that a victim had consensual intercourse with her attacker after the attack, not what she looked like while doing so.

■ Trials are fluid, however, and evidence that may not be constitutionally required at the outset of the trial because it fails the balancing test may become constitutionally required as other evidence is introduced. Thus, we must analyze whether, as a result of subsequently admitted evidence, any of the video or audio contained on the DVD became constitutionally required. We therefore consider whether DS's direct or cross-examination required the admission of any or all of the DVD's contents.

With regard to consent and mistake of fact as to consent, DS testified that she consented to all of the acts of sodomy depicted on the DVD, including acts that occurred after the incident of forcible sodomy in November 2006. There are no segments of the video in which DS begs the appellant to stop, tries to push the appellant off her, or cries, as she testified she did on the occasion of the alleged forcible sodomy. Therefore, there is nothing on the DVD from which the appellant could reasonably argue that, if she did push him, cry, or tell him to stop, he mistakenly believed she consented on the charged occasion because that was how she behaved during consensual sodomy. We therefore conclude that the DVD's contents were not constitutionally required to be admitted on the issues of consent or mistake of fact as to consent.

The appellant asserts that a reasonable person seeing the video could conclude that DS was a willing participant in its creation and, because of her religious beliefs, she had a motive to claim that she was both coerced into making the tape and engaging in sodomy.

However, trial defense counsel was able to cross-examine DS about her behavior caught on the tape. The military judge's pretrial ruling placed a limitation on the *type* of evidence the appellant could present related to bias or motive to fabricate, not his opportunity for cross-examination.[4] *See United States v. James*, 61 M.J. 132, 136 (C.A.A.F. 2005) ("[O]nce the defendant has been allowed to expose a witness's motivation in testifying, 'it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury.'") (quoting *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994)).

■ The appellant also asserts that the contents of the DVD were admissible to impeach DS's testimony about the nature of their relationship. Specifically, the appellant asserts that viewing the video would contradict DS's testimony that she "felt forced" into being recorded, which in turn would raise questions about the accuracy of her memory of the incident. On cross-examination, DS admitted that she "smiled through the tape." That statement is not inconsistent with the contents of the DVD, so it would not have been admissible as extrinsic evidence.[5] *United States v. Harrow*, 65 M.J. 190, 199 (C.A.A.F.2007) (if an inconsistency is admitted, extrinsic evidence is generally not admissible).

Therefore, because we conclude that none of the contents of the DVD were constitutionally required to be admitted—either at the time of the pre-trial ruling or at the time of the motion to reconsider—the military judge's decision to exclude them was not error. We further conclude that the exclusion of the evidence neither deprived the appellant of a fair trial nor an opportunity for cross-examination.

## II. Lesser–Included Offense Instruction

■ In his second assignment of error, the appellant claims for the first time on appeal that the military judge erred in failing to instruct on consensual sodomy as a lesser-

---

4. Because trial defense counsel chose not to inquire about these matters, we need not reach the question of whether those portions of the DVD would have been admissible to impeach a denial.

5. Trial defense counsel also apparently did not perceive her answer to be inconsistent with the contents of the DVD, as they did not use it to refresh her recollection or to impeach her as the military judge had previously allowed.

included offense. In the appellant's view, if the members found that he reasonably and mistakenly believed that DS had consented to the act of sodomy, he could properly have been convicted of consensual sodomy.

 A military judge has a sua sponte duty to instruct on all lesser-included offenses reasonably raised by the evidence. *United States v. Bean,* 62 M.J. 264, 266 (C.A.A.F.2005) (quoting *United States v. Griffin,* 50 M.J. 480, 481 (C.A.A.F.1999)). As long as there is some evidence that "reasonably raises" the applicability of a lesser-included offense, the court-martial must be instructed on that offense. *United States v. Davis,* 53 M.J. 202, 205 (C.A.A.F.2000). However, an accused may waive instruction on a lesser-included offense. *United States v. Smith,* 50 M.J. 451, 455 (C.A.A.F.1999). "No magic words are required to establish a waiver," but there must be more than a mere failure to object. *Id.* at 456.

The military judge engaged in an extensive discussion with the parties about whether he should instruct on any lesser-included offenses. Trial counsel requested an instruction on assault consummated by a battery. The defense counsel objected, stating, "[t]he [Manual for Courts–Martial] envisioned three [lesser-included offenses] for forcible sodomy," and that assault consummated by a battery was not among them. One of the lesser-included offenses listed in the *Manual* in effect at the time of trial was consensual sodomy. *Manual for Courts–Martial, United States,* ¶ 51.d.(2) (2008 ed.). Therefore, this dialog indicates that trial defense counsel had reviewed this section of the Manual and presumably considered consensual sodomy as a possible lesser-included offense.

After ruling that he would not instruct on assault consummated by a battery, the military judge turned to whether there were any other lesser-included offenses raised by the evidence. The following dialog ensued:

MJ: Now, with that in mind, as both sides are aware, I have a *sua sponte* duty to instruct on lesser included offenses. And, in the event someone might disagree with me down the road, defense counsel, it has been held previously in our appellate courts that the defense can waive an instruction on any lesser-included offense if they feel it will completely undermine their theory of the case. Is that what you're telling me you want to do?

SDC: Yes, Your Honor.

MJ: Okay, because I did think about the evidence during the recess and I can see several theories, and I can see at least one where that instruction would probably undermine you [sic] theory of your ... of that particular theory. I don't know about all the others. I don't think it would, but that one, yes. Okay, so that's an affirmative waiver, then?

SDC: Yes, Your Honor.

Here, there was no request at trial for an instruction on consensual sodomy as a lesser-included offense. As in *Smith,* the appellant's trial defense counsel actively participated in the Article 39(a), UCMJ, session in which the instructions were discussed; engaged in a discussion about lesser-included offenses with the military judge; and concurred with the military judge's comment that, while there may have been lesser-included offenses raised by the evidence, the defense's theory of the case could be undercut by instructions on those lesser-included offenses.

Although *Smith* also holds that the waiver rule applies only absent plain error, the basis for that holding is less than clear. On the one hand, Rule for Courts–Martial (R.C.M.) 920(f) states that failure to object to an instruction or the omission of an instruction constitutes "waiver," absent plain error. *See also United States v. Strachan,* 35 M.J. 362, 364 (C.M.A.1992). The text of R.C.M. 920(f) clearly contemplates a situation in which an accused stands mute or does not seek to enforce his right. This is forfeiture, not waiver. *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (waived rights are those where there is an intentional relinquishment or abandonment of a known right, whereas forfeited rights are those where there is simply a

failure to make a timely assertion of the right).

On the other hand, in a situation where there is a discussion about instructions on lesser-included offenses and an accused affirmatively exercises his right to waive an instruction, we fail to see how a plain error analysis would apply. Applying a plain error analysis in that circumstance would allow an accused two bites at the apple: he could affirmatively waive a lesser-included offense instruction at trial and, if his tactical decision proves to be unavailing, he could revisit that tactical decision on appeal. *See e.g., United States v. Pasha*, 24 M.J. 87, 91 (C.M.A.1987) (concluding without analyzing for plain error that even assuming instruction would have been appropriate, issue was waived when defense counsel affirmatively indicated his satisfaction and agreement with judge's determination (citing *United States v. Mundy*, 9 C.M.R. 130 (C.M.A.1953))).

Because we conclude that the appellant waived any instruction on consensual sodomy as a lesser-included offense, we do not reach the appellant's assertion that consensual sodomy on these facts would be a lesser-included offense of forcible sodomy.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred.[6] Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence are

AFFIRMED.

---

**6.** We note that the overall delay of more than 540 days between the time of docketing and review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006). Having considered the totality of the circumstances and the entire record, we find that the appellate delay in this case was harmless beyond a reasonable doubt. *Id.* at 135–36 (reviewing claims of post-trial and appellate delay using the four-factor analysis found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). *See also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F.2006); *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).