**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant GLENN J. LITTLE**
**United States Air Force**

**ACM 38338**

**19 September 2014**

Sentence adjudged 14 December 2012 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Military Judge: Jefferson B. Brown.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Thomas A. Smith.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of attempted wrongful sexual contact for grabbing the buttocks of Airman First Class (A1C) KK, one specification of dereliction of duty by failing to maintain professional relationships with junior enlisted members, one specification of aggravated sexual assault for penetrating A1C LJ's vagina with his fingers, one specification of battery for pushing A1C KK onto her bed, and one specification of unlawfully entering A1C NW's dorm room, in violation of Articles 80, 92, 120, 128, and 134, UCMJ, 10 U.S.C. §§ 880, 892, 920, 928, 934. The adjudged and

approved sentence was a bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Before us, the appellant asserts that: (1) the evidence was factually insufficient to sustain his conviction for the aggravated sexual assault of A1C LJ; (2) the evidence was factually insufficient to sustain his conviction for the attempted wrongful sexual contact and assault consummated by a battery against A1C KK; (3) the military judge erred in his instructions concerning use of evidence of sexual assault; and (4) the military judge erred by failing to instruct on the effect of voluntary intoxication. We disagree and affirm.

*Background*

Five junior Airmen, A1C LJ, A1C NW, A1C CC, A1C KK, and A1C AJ, were stationed together at RAF Mildenhall at the time of the offenses. A1Cs NW, CC, and KK were assigned to the Force Support Squadron as food service workers. A1Cs LJ and AJ were assigned to a different squadron. The appellant was a food service supervisor in the Force Support Squadron.

On 3 March 2012, A1Cs LJ, NW, CC, and AJ planned to go to an off-base "hip-hop club." Before going to the club, the Airmen stopped at the Galaxy Club on RAF Mildenhall so A1C CC could speak with the appellant. The appellant gave A1C CC money to spend that evening, which she shared with her friends. The appellant was not introduced to A1C LJ.

Once at the hip-hop club, the Airmen drank and "twerked," which was described as a dance in which a female shakes her buttocks while facing away from her dance partner, who not uncommonly has his hands on her hips. While A1C LJ was "twerking," the appellant, who had arrived at the club separately, approached her from behind and began dancing with her. Because her body was facing away from him, A1C LJ did not know that the appellant had become her dance partner. They danced for one to two minutes with the appellant's hands on A1C LJ's hips.

A1C LJ testified that her dance partner put his hand inside her pants and digitally penetrated her vagina. She immediately pushed his hand away. She turned around, saw that it was the appellant, and pushed him away. According to A1C LJ, the appellant put his fingers in his mouth, sucked them, and smirked.

The women then left the club. As they drove away, A1C LJ called her boyfriend in the United States and told him what happened. After that phone call, A1C CC called the appellant from the car. A1C CC told the appellant that she couldn't believe that he "tried to finger [her friend]." The appellant told A1C CC that he didn't remember doing that, but if he did, he was sorry.

The following day, A1C LJ sent the appellant an e-mail telling him that she was mad at him and that he was "disgusting." The appellant responded as he did to A1C CC, saying that he did not remember doing what A1C LJ claimed, but that if he did, he was sorry. A similar conversation between A1C LJ's boyfriend and the appellant followed.

Approximately one month after the incident, A1C LJ told the base Sexual Assault Response Coordinator (SARC) what had occurred. The SARC report led to a criminal investigation by the Air Force Office of Special Investigations (AFOSI). When interviewed by AFOSI, the appellant maintained that he had no recollection of inserting his finger into A1C LJ's vagina while they were dancing, but that if he did it, he was sorry. He told investigators that he had purchased several bottles of Cîroc, a flavored vodka, but that much of what he purchased had been consumed by others.

The investigation ultimately identified other women who claimed the appellant had engaged in inappropriate acts with them. A1C KK reported, and testified at trial, that on an evening in March 2012, the appellant came to her dormitory room and knocked on the door. A1C KK recognized him and let him in. She believed he was intoxicated. Once inside her room, the appellant asked her whether she had ever "been with" a black man. She told him she had not; the appellant asked her if she wanted to. After she said no, the appellant asked whether she was racist. A1C KK had never spoken before to the appellant about sexual topics and felt that the conversation was inappropriate.

When A1C KK denied that she was a racist, the appellant grabbed her shoulders and pushed her down to her bed. He took his left arm and placed it across her collar bone and chest, and with his right arm he tried to pull her legs out from underneath her. A1C KK struggled against him and told him to get off, but he had her pinned to her bed. As the appellant tried to pull A1C KK's legs out from under her, his hand "kept going higher and higher" until he "was grabbing [her] upper thigh and [her] lower butt area." A1C KK clarified that although the appellant made contact with her buttocks, he did not actually "grab" her buttocks.

A1C KK struck the appellant's temple with her closed fist in an attempt to get him to release her. He let her up and stepped away from her. A1C KK moved to her computer, intending to log onto Facebook and see whether she could contact one of her friends for help. The appellant lay down on her bed and asked whether she wanted to "see his dick." She said no, but when she looked over at him, she saw the appellant touching himself through his clothing. The appellant then got up and left the room.

A day or two later, A1C KK saw the appellant at work. He apologized to her for what he had done and told her that he had been drunk. A1C KK did not report this incident to law enforcement. She did, however, tell A1C JD that she had had an "unpleasant encounter" with the appellant but did not go into detail.

Airman First Class NW testified that the appellant told her that he wanted to "be with" her and be her "sugar daddy." Approximately one month after the incident with A1C LJ at the hip-hop club, A1C NW and a friend were drinking in A1C NW's dorm room. The appellant sent A1C NW a text asking her what she was doing. She replied that they were in her room drinking. The appellant asked if he could join them, and A1C NW said yes.

Another of A1C NW's friends arrived around the same time as the appellant, and they all drank throughout the night. The appellant again told A1C NW that he wanted to be with her. She again said no. Around 0100, as the evening wound down, A1C NW asked the appellant to leave her room. He said he had been drinking and asked if he could stay. She said no, and he left. The door was closed, but not locked, behind him.

The next morning, A1C NW awoke to find the appellant in her room sleeping on her loveseat, with vomit on the floor and on her laptop computer. She woke the appellant and told him to clean up the mess. He did, and he also gave her several hundred dollars for a new laptop.

Additional facts necessary to resolve the assignments of error are included below.

*Factual Sufficiency*

The appellant argues that the evidence is factually insufficient to establish his guilt beyond a reasonable doubt. We review claims of factual insufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

1. Aggravated Sexual Assault

Under the law applicable at the time of the appellant's offense,[1] the elements of the charged offense of aggravated sexual assault were:

> (1) That at or near the time and place alleged, the appellant caused A1C LJ to engage in a sexual act, to wit: penetrating her vaginal opening with his fingers, and

---

[1] The date of the offense, 3 March 2012, determines the applicable version of Article 120, UCMJ, 10 U.S.C. § 920. *See Manual for Courts-Martial, United States* (*MCM*), A28 (2012 ed.).

(2) That the appellant did so by causing bodily harm to A1C LJ, to wit: offensive touching of the vulva and vaginal opening.

*See Manual for Courts-Martial, United States* (*MCM*), A28-6, ¶ 45.b.(3)(b) (2012 ed.). A "sexual act" is the penetration, however slight, of the genital opening with an intent to abuse, humiliate, harass, degrade, or to arouse or gratify sexual desires. The vulva is the external genital organs of the female, including the entrance to the vagina and the labia majora and minora. An offensive touching of another, however slight, constitutes bodily harm. *MCM*, A28-3 (2012 ed.).

The appellant challenges only the factual sufficiency of the evidence, arguing that we should find A1C LJ not to be credible because (1) her version of events is physically impossible and riddled with inconsistencies and (2) she had a motive to fabricate a sexual assault allegation to cover up her allowing the appellant to digitally penetrate her.

Although the appellant raises a number of factual matters for our consideration, the most significant relates to A1C LJ's description of the assault itself. Immediately after the incident and several times later, A1C LJ said that the appellant "tried to finger" her. At trial, she testified that the appellant did, in fact, insert his fingers into her vagina up to his second knuckle. She explained that her saying "he tried" meant that when she pushed him away "he didn't keep doing it."

We have thoroughly reviewed the evidence, including the appellant's arguments at trial and on appeal about the weight of the evidence and the credibility of the witnesses. We have paid particular attention to the evidence concerning the various witnesses' level of intoxication and the consistency (or inconsistency) of the witnesses' statements about what occurred at the club and thereafter. After weighing the evidence and making allowances for not having personally observed the witnesses, we are nonetheless convinced of the appellant's guilt of this offense beyond a reasonable doubt. We therefore reject this assignment of error.

## 2. Attempted Wrongful Sexual Contact and Assault Consummated by a Battery

Although initially charged with wrongful sexual contact,[2] the appellant was convicted of the lesser included offense of attempted wrongful sexual contact in violation of Article 80, UCMJ. The elements of that offense are:

---

[2] Because the offense occurred in early 2012, the applicable version of Article 120, UCMJ, is the one for offenses committed between 1 October 2007 and 27 June 2012. *See MCM*, A28 (2012 ed.).

(1) That at or near the time and place alleged, the appellant did a certain act, that is:  attempt to grab the buttocks of A1C KK,

(2) That the act was done with specific intent to commit the offense of wrongful sexual contact,

(3) That the act amounted to more than mere preparation, that is:  it was a substantial step and a direct movement toward the commission of the intended offense, and

(4) That the act apparently tended to bring about the commission of the offense of wrongful sexual contact, that is, the act apparently would have resulted in the actual commission of the offense except for the appellant's inability to grab A1C KK's buttocks, which prevented completion of that offense.

*See MCM*, Part IV, ¶ 4.b.; *see also MCM*, A28-9, ¶ 45.b.(13) (2012 ed.).

"Sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person with the intent to abuse, humiliate, degrade, or arouse or gratify sexual desires.  *MCM*, A28-3 (2012 ed.).

The elements of the charged offense of assault consummated by a battery are:

(1) That at or near the time and place alleged, the appellant did bodily harm to A1C KK,

(2) That the appellant did so by pushing her by the shoulders[3] onto her bed, and

(3) That the bodily harm was done with unlawful force or violence.

*See MCM*, Part IV, ¶ 54.b.(2).

---

[3] The appellant was initially charged with pushing her "by the chest or shoulders" onto her bed.  In their finding of guilty, the members excepted the words "chest or."

In attacking the factual sufficiency of the evidence of these offenses, the appellant asserts that there is insufficient evidence that the appellant ever intended to grab A1C KK's buttocks and that, if he did, it was not done with the requisite intent. He also argues that A1C KK viewed his actions as a game and therefore consented to his touching her. Finally, he asserts that A1C KK is not credible and fabricated the sexual assault allegation when interviewed by AFOSI to deflect attention from her decision to "fool around" with the married appellant.

We have again thoroughly reviewed the evidence contained in the record of trial, paying particular attention to those matters the appellant has called to our attention. After weighing the evidence and making allowances for not having personally observed the witnesses, we are nonetheless convinced of the appellant's guilt of these offenses beyond a reasonable doubt. We therefore reject this assignment of error.

*Findings Instructions*

We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010); *see United States v. Thomas*, 11 M.J. 315 (C.M.A. 1981). Where there is no objection to an instruction at trial, we review for plain error. *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013). If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

The appellant argues that the military judge's instructions were erroneous in two ways: (1) that the instruction given pursuant to Mil. R. Evid. 413 eviscerated the "spill-over" instruction and (2) that the military judge failed to instruct on the impact of voluntary intoxication.

## 1. Mil. R. Evid. 413 Instruction

In Specification 1 of Charge I, the appellant was charged with the aggravated sexual assault of A1C LJ. Specification 3 of Charge I alleged the wrongful sexual contact of A1C KK. Specification 2 of Additional Charge III (abusive sexual contact for touching A1C LJ's genitalia) and Specification 3 of Additional Charge III (wrongful sexual contact for touching A1C JD's breasts) both resulted in acquittals.

In his instructions to the members, the military judge said:

> An accused may be convicted only on evidence before the court, not on evidence of a general criminal disposition. Each offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you

find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense.

. . . .

In addition, evidence that the accused committed a sexual assault, as alleged in Specifications 1 and 3 of Charge I and Specifications 2 and 3 of Additional Charge III may have a bearing on each other—but only if you first determine by a preponderance of the evidence, that is more likely than not, the offenses alleged in Specification [sic] 1 and 3 of Charge I and Specifications 2 and 3 of Additional Charge III occurred.

The military judge then properly instructed the members, in accordance with Mil. R. Evid. 413, how they could use this "propensity" evidence if they found the alleged acts more likely than not occurred. After reminding the members that this "propensity" instruction applied only to the specifications and charges he stated, he concluded:

The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged. Proof of one charged offense carries with it no inference the accused is guilty of any other charged offense. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt; proof of one offense carries with it no inference the accused is guilty of any other offenses.

Before us, the appellant argues that by instructing the members as he did, the military judge eviscerated the spillover instruction as it related to the specification alleging that the appellant pushed A1C KK onto her bed and allowed the members to use evidence of the appellant's sexual assaults to conclude that he had a propensity to commit an assault consummated by a battery.

The appellant objected to the military judge's instruction at trial. The appellant does not argue, nor do we conclude, that the instruction was an erroneous statement of the law. Rather, he argues that the instruction was so confusing that it overcomes the presumption that the members followed the law. *See United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991). The military judge specifically identified the charges and specifications to which the Mil. R. Evid. 413 "propensity" instruction applied. We do not believe that the juxtaposition of the two legally-correct instructions, under the facts of this case, was confusing. Moreover, the members' acquittal of the appellant of four

additional sexual assault offenses supports this conclusion.  We find no error, plain or otherwise, and reject this assignment of error.

## 2.  Voluntary Intoxication

Finally, the appellant alleges the military judge erred by failing to give an instruction on the impact of voluntary intoxication on the two specific-intent crimes of which he was convicted:  the aggravated sexual assault of A1C LJ and the attempted wrongful sexual contact with A1C KK.

The military judge instructed the members that voluntary intoxication was not relevant to whether the appellant mistakenly believed that either victim consented as follows:  he explained fully the effect of voluntary intoxication and mistake of fact with respect to A1C LJ and said, with respect to A1C KK, that the previous instruction "applies equally here."

The military judge did not, however, give the instruction found in the Military Judge's Benchbook on the effect of voluntary intoxication on specific intent crimes.  That instruction says, in part:

> In deciding whether the accused had a specific intent at the time you should consider the evidence of voluntary intoxication. The law recognizes that a person's ordinary thought process may be materially affected when he is under the influence of intoxicants.  Thus, evidence that the accused was intoxicated may, either alone, or together with other evidence in the case cause you to have a reasonable doubt that the accused (had the specific intent to _____).

Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 5-12 (1 January 2010).

The appellant never requested this instruction at trial and, aside from the objection to the Mil. R. Evid. 413 instruction, affirmatively told the military judge that the instructions as given were correct statements of the law and that no additional instructions were requested.  Therefore, the appellant has either waived or forfeited this issue.  *See* Rule for Courts-Martial (R.C.M.) 920(f).[4]

---

[4] Although *United States v. Smith*, 50 M.J. 451 (C.A.A.F. 1999) holds that the waiver rule applies only absent plain error, the basis for that holding is less than clear.  On the one hand, R.C.M. 920(f) states that failure to object to an instruction or the omission of an instruction constitutes "waiver" absent plain error.  The text of R.C.M. 920(f) clearly contemplates a situation in which an accused stands mute and/or does not seek to enforce his right.  This is forfeiture, not waiver.  *United States v. Olano*, 507 U.S. 725, 733 (1993) (stating that waived rights are those where there is an intentional relinquishment or abandonment of a known right, whereas forfeited rights are those where there is simply a failure to make a timely assertion of the right).  On the other hand, in a situation where there is a

R.C.M. 916(l)(2) provides:

> [E]vidence of any degree of voluntary intoxication may be introduced for the purpose of raising a reasonable doubt as to the existence of actual knowledge, specific intent, willfulness, or a premeditated design to kill, if actual knowledge, specific intent, willfulness, or premeditated design to kill is an element of the offense.

However, "[w]hen raising an issue of voluntary intoxication as a defense to a specific-intent offense, 'there must be some evidence that the intoxication was of a severity to have had the effect of rendering the appellant incapable of forming the necessary intent,' not just evidence of mere intoxication." *See United States v. Peterson*, 47 M.J. 231, 233–34 (C.A.A.F. 1997) (quoting *United States v. Box*, 28 M.J. 584, 585 (A.C.M.R. 1989)).

In our determination of whether failure to give this instruction amounted to plain error, we consider how this matter was litigated at trial. *United States v. Hibbard*, 58 M.J. 71, 76 (C.A.A.F. 2003). The evidence that the appellant may have been intoxicated during the incident with A1C LJ came primarily from his statement to AFOSI, in which he said that although he had purchased several drinks that night, most of what he had purchased had been consumed by others. He also told AFOSI that although he could remember certain details of the evening, including much of what occurred before and after his dancing with A1C LJ, he could not remember doing what she alleged.

The evidence that the appellant may have been intoxicated during the incident with A1C KK came during A1C KK's testimony. She stated that although she did not remember smelling the odor of an alcoholic beverage on the appellant's breath and he was able to articulate his words clearly, he "appeared intoxicated." She also testified that after the incident, the appellant apologized for his conduct and attributed it to his drinking.

In closing argument, trial defense counsel argued that either 1) the incident with A1C LJ never occurred or 2) the appellant's actions with A1C KK were intended as playful and he mistakenly believed she consented. In neither case did trial defense counsel argue that the appellant's level of intoxication was so significant that it negated his ability to have the necessary intent to commit the offense.

---

discussion about a specific instruction and an accused affirmatively exercises his right to waive an instruction, we fail to see how a plain error analysis would apply. *United States v. Sousa*, 72 M.J. 643 (A.F. Ct. Crim. App. 2013).

We discern no time where the defense introduced evidence of the appellant's intoxication "for the purpose of raising a reasonable doubt as to the existence of . . . specific intent." R.C.M. 916(l)(2). Therefore, we conclude that the appellant has not met his burden of demonstrating plain error by the military judge for not sua sponte instructing further on voluntary intoxication. Moreover, even if the military judge had given the voluntary intoxication instruction, we conclude that the evidence of intoxication was not of the severity contemplated by *Peterson*. Therefore, we find beyond a reasonable doubt that any error did not contribute to the appellant's convictions on these offenses. We therefore reject this assignment of error.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

ACM 38338