# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class DOUGLAS M. GRIFFING
### United States Air Force

## ACM 38443

## 23 March 2015

Sentence adjudged 23 May 2013 by GCM convened at Royal Air Force Lakenheath, United Kingdom.  Military Judge:  Michael Coco.

Approved Sentence:  Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant:  Captain Michael A. Schrama

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted, contrary to his pleas, by a panel of officer members of one specification of attempting to receive child pornography and one specification of knowingly and wrongfully accessing child pornography in violation of Articles 80 and 134, UCMJ, 10 U.S.C. §§ 880, 934.[1]  The court sentenced him to a dishonorable

---

[1] The appellant was acquitted of one specification of knowing and wrongful possession of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934.

discharge, 2 years' confinement, and reduction to E-1.  The sentence was approved, as adjudged, on 10 September 2013.

The appellant argues that:  (1) the military judge erred when he failed to suppress evidence obtained from the search of the appellant's electronic devices, (2) the military judge erred by failing to include certain definitions in his instructions, (3) the military judge erred when he admitted certain evidence under Mil. R. Evid. 404(b) over defense objection, (4) the military judge erred when he failed to instruct the panel members on how to consider certain evidence admitted under Mil. R. Evid. 404(b), (5) one of the images supporting his conviction was constitutionally protected, (6) the court members failed to follow instructions on voting, (7) trial counsel's sentencing argument was improper, (8) the military judge erred by failing to merge the specifications for sentencing, and (9) the staff judge advocate's recommendation failed to address legal errors raised in clemency.

Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.[2]

*Background*

On 16 March 2012, the appellant, while at a restaurant on Royal Air Force (RAF) Lakenheath, was observed viewing images of naked children on a laptop computer.  The witness, a wing commander from an adjoining base, was at the restaurant reading and watching college basketball while his children attended a birthday party.  At some point when he glanced up at the television, the witness saw some images on the appellant's laptop he initially thought might be family photos of nude children.  The witness described the photos as groups of naked children in their early teens.  From his position about six to ten feet behind the appellant, he could not see enough detail to say whether the children's genitals were visible.  One that drew his attention was of a child floating in a pool, with the focus of the image on the child's bare buttocks.  The witness believed the appellant was accessing the photos from links on a web page, rather than his hard drive.  As the witness watched the appellant scroll through the photos and return to certain images repeatedly, he began to believe that the appellant might be viewing child pornography.

---

[2]  We note that the court-martial order does not include the original Specifications 2 and 3 of the Charge upon which the appellant was arraigned.  *See* Rule for Courts-Martial (R.C.M.) 1114(c)(1).  It also does not note the military judge's dismissal of the greater offense in the version of Specification 3 that went to the panel.  We direct the promulgation of a corrected order.  We note a similar deficiency in the Air Force Form 1359, *Report of Result of Trial*.  As a full recitation of the charges upon which the appellant was arraigned is not required in Rule for Courts-Martial 1101, and the use of this form has been discontinued in favor of a memorandum under Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.2, (6 June 2013), we commend correction of this matter to the appropriate administrative officer.  We find that the omission of the original Specifications 2 and 3 of the Charge in the matters attached to the Staff Judge Advocate's Recommendation did not materially prejudice a substantial right of the appellant since they were withdrawn only after consultation with the convening authority that took action in the case.

After some deliberation, the witness decided to seek advice and assistance. He discreetly stepped out of the restaurant and, after failing to reach a friend who was a senior judge advocate with criminal law expertise, called his on-call judge advocate. After consulting with her, he then called the on-call agent from the Air Force Office of Special Investigations (AFOSI). The agent advised him that he would respond to the restaurant and that the witness could call security forces if he became concerned that the appellant would leave before the agent arrived. The witness did call security forces, and both they and the AFOSI agent responded to the restaurant. The appellant was detained as he tried to leave and was later taken to an interview room at the AFOSI detachment. The interview room was equipped with video monitoring, and the recording of the appellant at AFOSI was included in the record of trial.[3]

The appellant initially appeared agitated and afraid, saying he was "scared" and often sobbed and put his hands over his head. His breathing was noticeably accelerated, and he had a mild stutter when talking to the agents. After being advised of his rights, the appellant asked for an attorney. AFOSI then left the appellant alone in the interview room for approximately 23 minutes. By the end of that time, the appellant had calmed down and was no longer sobbing. His breathing and speech appeared normal.

After the appellant invoked his right to counsel, the AFOSI agents turned to the possibility of getting consent to search the appellant's dormitory room. Towards the end of the 23-minute interval, the appellant heard the agents through the door and knocked to get their attention. When agents opened the door, the appellant told them he heard them talking about a laptop, and, if it was his laptop they were talking about, that he might be willing to cooperate after talking to an attorney. An agent who had been outside the door came back into the interview room, explaining that they were discussing some paperwork she had with her.[4] She told the appellant his acting first sergeant could come over to get him to make sure he was safe and take him home, but added, "[W]e're going to need to come over to your house." She told him if he was "OK with that" then he just needed to sign the paperwork in two places. The appellant began asking questions, including whether he could go home without allowing them to search his room, and then asked the agent to explain exactly what was on the form. The agent took a short break and got the appellant some water.

When the agent returned, she told the appellant that based on their information from the witness they now had an open investigation into child pornography, and she told him, "[W]e're going to have to take your computer and we're going to have to look at it, and in addition to that, we're going to go to your house, and we're going to look at your

---

[3] Portions of the audio from the interview room are unintelligible. Where language is quoted, the recording was sufficiently clear for the court to make a finding of fact that the quoted words were spoken. Other paraphrasing of the exchange between the appellant and the agents indicates the court's finding of fact that either those words or words to that effect were spoken.

[4] It is unclear from the record what paperwork she had. Evidence of her later filling out a consent form with the appellant suggests this initial paperwork was not the same form that later was appended to the record.

house." The agent reaffirmed the appellant's right not to answer any questions and proceeded to go through an Air Force IMT 1364,[5] *Consent for Search and Seizure,* in detail with him. She placed the form in front of the appellant and went through the form as he read it, pointing out several provisions in the form. She read out loud the portion setting out his right to refuse consent and explaining the potential uses of any evidence found. She did not read out loud the next sentence explaining that if he refused consent they could not search without a warrant or other lawful authorization.

As they reached the end of the form, the agent made an unintelligible comment to the appellant, and the appellant responded that he felt "very close to physically ill right now." When the agent asked if she could do anything to help, or if he wanted to go outside to get some air, the appellant said, "I'm not sure how much that would help, um, if . . . I'm not trying to shoo you out of the room or anything, but if I would be able to have legal aid present to talk to, and possibly someone from mental services." The agent reassured the appellant that his first sergeant would be able to help him with those concerns and asked if he understood that, to which he responded "yes." She then redirected him to the form, filling out the date and time just above the signature block. The appellant, apparently prompted by the recollection that it was Friday, spontaneously commented that he had really big plans for the weekend including going to London. As he began to elaborate on what he had planned to do, he thought better of it, saying "actually, I think I'll just shut up." As he was preparing to sign the form, the appellant said in a low tone, "this is the only way I'm going home," or words to that effect, and then confirmed where he should sign and signed the form granting his consent.

In addition to seeking consent for a search of the appellant's room, AFOSI also sought a probable cause search authorization from the military magistrate. Because of the late hour and the appellant's likely return to his residence, AFOSI sought an immediate verbal authorization for a search of the appellant's residence and his backpack containing his laptop. The agent arranged a three-way phone conference with the base military magistrate and a judge advocate from the base legal office. During the conference, the agent recounted for the magistrate what the witness from the restaurant had told him. The magistrate was familiar with the witness from his official duties and considered him to be a credible source. Neither the AFOSI agent nor the judge advocate raised the possibility that the images constituted lawful child erotica rather than child pornography, nor did the military magistrate ask any questions about the types of details that might distinguish between child erotica and child pornography. During the conference, the judge advocate did not provide additional details or analysis but did state that he believed there was probable cause for a search of the backpack and the residence. The magistrate found there was probable cause to search the backpack and the dormitory room and authorized both searches.

The searches together produced all of the evidence supporting the charges in this

---

[5] IMT, or Information Management Tool, is equivalent to a form.

case. The search of a portable hard drive contained in the backpack uncovered images constituting child pornography in the drive's "recycle bin" folder. The search of a desktop computer found in the appellant's dormitory room disclosed link files indicating that a user accessed certain files that contained child pornography and also disclosed cached entries in Internet browser database files indicative of searches for child pornography. There were also numerous image files found in unallocated space,[6] some of which may have constituted child pornography but most of which were child erotica.

Finally, a search of the laptop uncovered a peer-to-peer file sharing program with search terms associated with child pornography and incomplete downloads of files whose names were indicative of child pornography. The laptop also included the swimming pool images seen by the witness. Those files were determined not to constitute child pornography.

The appellant was ultimately convicted of two specifications involving child pornography. One specification alleged the appellant knowingly and wrongfully accessed child pornography with an intent to view it. The appellant was also convicted of attempting to knowingly and wrongfully receive child pornography. The appellant was acquitted of knowingly and wrongfully possessing child pornography on the portable hard drive.

*Admissibility of Evidence from the Appellant's Dormitory Room and Backpack*

The appellant argues that the military judge erred when he failed to suppress all evidence obtained as a result of the illegal search of the appellant's electronic devices. There are two searches at issue in this case, the search of the appellant's dormitory room and the search of the appellant's backpack.

At trial, the military judge found that the search authorization was valid for the search of the backpack (and the portable hard drive contained within it), but not for the dormitory room. He further held that even in the absence of probable cause, the evidence found in the backpack and dormitory room was admissible because the agents relied upon the authorization in good faith. Finally, the military judge ruled that the fruits of the dormitory room search would have been admissible in any event based upon the appellant's voluntary consent.

We review a military judge's denial of a suppression motion under an abuse of discretion standard and "consider the evidence 'in the light most favorable to the' prevailing party." *United States v. Rodriguez*, 60 M.J. 239, 246–47 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)). We will find an abuse of discretion if the military judge's "findings of fact are clearly erroneous or his

---

[6] The Government expert testified that data found in unallocated space generally indicates that a file with that content was accessible at one time, but the data was no longer accessible without specialized software.

conclusions of law are incorrect." *Id.* at 246 (quoting *United States v. Ayalo*, 43 M.J. 296, 298 (C.A.A.F. 1995)) (internal quotation marks omitted).

### 1. Consent to search dormitory room

We first consider the military judge's finding that the appellant voluntarily consented to a search of the dormitory room since our finding on that issue will determine the scope of our review concerning the search authorization and any potential exceptions to the exclusionary rule.[7]

Our superior court recently reaffirmed the framework for our review of a consent search in *United States v. Piren*, 74 M.J. 24 (C.A.A.F. 2015). A search may be conducted "with lawful consent." Mil. R. Evid. 314(e)(1). "Consent is a factual determination," and a military judge's findings "will not be disturbed on appeal unless it is unsupported by the evidence or clearly erroneous." *United States v. Vassar*, 52 M.J. 9, 12 (C.A.A.F. 1999) (quoting *United States v. Radansky*, 45 M.J. 226, 229 (C.A.A.F. 1996)) (internal quotation marks omitted). Courts evaluate voluntariness with regard to consent based on the totality of circumstances. *United States v. Wallace*, 66 M.J. 5, 9 (C.A.A.F. 2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973)). Where the Government has prevailed on a motion to suppress, we review the evidence in the light most favorable to the Government. *United States v. Kitts*, 43 M.J. 23, 28 (C.A.A.F. 1995).

The military judge issued a comprehensive written ruling on this aspect of the motion to suppress. While each party's pleading included a summary of the facts, neither argued that any of the military judge's findings of fact were clearly erroneous. In particular, the appellant, while arguing that this court should find the consent involuntary, has not asserted that any of the military judge's findings with regard to consent are clearly erroneous. Instead, he offers reasons why, apparently under a de novo standard of review, this court should find the appellant's consent involuntary.

---

[7] We recognize that the Air Force Office of Special Investigations (AFOSI) agents interacted with the appellant after he had invoked his right to counsel and ultimately procured his consent for law enforcement to search his dormitory room. Although these facts bear some similarity to those in our superior court's decision in *United States v. Hutchins*, 72 M.J. 294 (C.A.A.F. 2013), we find that decision's ultimate holding to be inapplicable here because, unlike the appellant in that case, the appellant did not make any incriminating responses as part of or following that interaction with the AFOSI agent. Instead, he simply consented to the search. *Hutchins* does not automatically transform a post-invocation request for consent into a constitutionally impermissible event such that the fruits of that search are excluded. *See Hutchins* at 299 n.9 (noting the decision does not alter the "basic proposition" that a request for consent to search itself does not implicate the Fifth Amendment because it is not considered "interrogation" reasonably likely to elicit an incriminating response). Instead, the focus in *Hutchins* was whether the request for consent itself, including the circumstances surrounding it, "open[ed] a more 'generalized discussion relating directly or indirectly to the investigation'" *Id.* at 298 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)). That is not what occurred here.

Applying the standard of review specified under *Piren* and *Vassar*, we conclude that the military judge's finding of consent was not clearly erroneous.[8] The findings by the military judge that the appellant was in custody, had requested but not yet been provided counsel, had been advised that he had a right not to consent, and had been informed of and invoked his constitutional rights prior to agents seeking consent are not contested.

Other aspects of the military judge's findings are disputed by the appellant. The appellant argues that his mental state was inconsistent with a voluntary act of consent. The military judge found that the appellant, although crying and distraught when he was brought in, regained his composure enough to not only invoke his rights, but catch himself on two occasions when he began to initiate conversations with the AFOSI agents. The military judge's finding is supported by the interview video.

The appellant also asserts that the interview was coercive, pointing out that the agent told him they were going to have to look at his house and arguing that appellant's statement that granting consent was "the only way [he was] going home" reflected his belief that he would only be released if he gave his consent. The military judge reached a different assessment, pointing out the short duration of detention, the fact that AFOSI only had to ask once for consent, and that the agent who sat with him while he filled out the consent form was patient, relaxed, and explicitly told him he had the right to refuse consent. While the military judge's findings are different than those suggested by the appellant, they are not clearly erroneous. His findings are supported by the interview video and the appellant's consent form. They simply reflect a different assessment of the evidence.

Finally, the appellant suggests that fatigue, as well as a lack of experience and intelligence weigh against finding that his consent was voluntary. The military judge found that the appellant was of above average intelligence, and "seemed to make a calculated decision on which rights to invoke and which rights to waive." Here again, the military judge's ruling is supported by at least some evidence. The prosecution admitted the appellant's training records which show above average performance, and the video shows the appellant choosing when to speak and when to remain silent, including the appellant's re-initiation of contact with AFOSI when he heard them outside the door. While reasonable minds could differ as to how to interpret the facts related to the appellant's decision to sign the form granting consent to search his room, the

---

[8] We note that the military judge's fact-finding was guided by factors identified in Mil. R. Evid. 314 and *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), rather than the more concise list adopted by the Court of Appeals for the Armed Forces in *United States v. Wallace*, 66 M.J. 5 (C.A.A.F. 2008). We have examined the factors the military judge identified and conclude that they cover at least all of the considerations identified in *Wallace*. *See Wallace*, 66 M.J. at 9. Because the judge considered all of the elements of the *Wallace* factors, we need not consider whether his finding of consent was "influenced by an erroneous view of the law." *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996).

interpretation by the military judge was not clearly erroneous, and we therefore will not disturb it upon appeal. *Vassar*, 52 M.J. at 12.

### 2. Authorization to search the appellant's backpack

We next turn to the validity of the authorization to search the appellant's backpack.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "A military judge's decision to find probable cause existed to support a search authorization as well as to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010). "[D]etermination of probable cause by a neutral and detached magistrate is entitled to substantial deference." *United States v. Maxwell*, 45 M.J. 406, 423 (C.A.A.F. 1996) (quoting *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1993)) (internal quotation marks omitted). The military judge would not have abused his discretion when denying the motion to suppress if the magistrate had a "substantial basis" for determining that probable cause existed. *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Probable cause exists when there is sufficient information to provide the authorizing official "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Mil. R. Evid. 315(f)(2). Authorization to search may be granted by an "impartial individual," who may be a commander, military magistrate, or military judge, in accordance with the underlying constitutional requirement that a search authorization be issued by a "neutral and detached" magistrate. Mil. R. Evid 315(d); *United States v. Maxwell*, 45 M.J. 406, 423 (C.A.A.F. 1996). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here again, neither party has asserted that the military judge's findings of fact pertaining to the search authorization are clearly erroneous or unsupported by the evidence. Our review finds them to be well supported, and we adopt them.

First, we consider whether the magistrate had a "substantial basis" for finding probable cause. *Id.* Part of the difficulty in determining whether there was a substantial basis in light of existing case law is that the circumstances of this case are somewhat unusual. The appellant cites numerous child pornography cases in which courts have determined that terse descriptions of images or broad generalizations are insufficient to provide a substantial basis for a warrant. The appellant even recounts one court's exhortation that the judge below "should have asked to see the image." But of course,

that is the problem in this case—no investigator could produce the image for the magistrate. Accordingly, we find inapplicable the many cases the appellant cites in which our superior court analyzed what is required of an affiant who has access to a picture to accurately convey to the magistrate how that picture depicts sexually explicit conduct.

We find the court's analysis in *United States v. Leedy* to be much more applicable to the facts of this case. 65 M.J. 208 (C.A.A.F. 2007). In *Leedy*, the potential misconduct came to light when an Airman's roommate bumped the Airman's computer, disengaging the screen-saver and revealing a list of recently played file names. "One file name that [the roommate] remember[ed] was '14 year old Filipino girl,' and though [the roommate] did not remember the name of any other files, he recalled that some mentioned ages and some mentioned acts. [The roommate] became concerned that these files included child pornography." *Id.* at 212. The court observed that they were aware of only one other case that upheld a search on the basis of file names alone, but emphasized that the "file title '14 year old Filipino girl,' does not appear in isolation. . . . [N]one of these facts are abstract pieces of evidence, but rather are properly viewed in context, through the professional lens in which they were presented to the magistrate." *Id.* at 215. In *Leedy*, the court considered additional contextual factors such as the sexually suggestive nature of the other titles, the investigator's opinion based upon experience that the names containing ages and acts were also consistent with child pornography, and that individuals who possess child pornography rarely voluntarily dispose of their collections. *Id.* at 215–16. The file name, in that context, was enough to constitute a substantial basis for a search authorization for the Airman's computer.

This case is similar in that, while the individual pieces of evidence are an insufficient basis for probable cause in isolation, the magistrate found them sufficient in context as a whole and that determination was upheld by the military judge.

The military judge found the following facts: (1) the witness was positioned close enough to tell that the images viewed by the appellant depicted nude children but could not see whether genitalia were visible, (2) the witness was close enough to estimate the ages of the children to be between 10 and 12 years old, (3) the witness discounted the possibility that they were family photos because of the type of directory the appellant was using to access the files and the way he scrolled through the images, (4) one of the images depicted a child's naked buttocks as the child floated in a pool, (5) the appellant returned to the group photo of the naked children several times, and (6) the manner in which the appellant scrolled through the pictures led the witness to believe that the appellant was viewing child pornography.

In addition, the military judge found that the appellant behaved suspiciously when he believed the witness was following him and once again when he was detained by security forces. The military judge also found as fact that the magistrate knew the

witness professionally, knew he was a wing commander at an adjoining installation, and had no concerns about his credibility.

The evidence available to the magistrate, as established by the military judge's findings of fact, offered this magistrate much more to go on than the evidence in *Leedy*. The source of the information was a known, experienced, trustworthy commander with no personal or professional stake in the outcome of the case. The images clearly depicted naked children, including at least one in which the focus of the photo, the child's buttocks, suggested a sexual rather than artistic attraction. The manner in which the appellant viewed the photos was, at least to the impartial witness, also suggestive of a sexual interest. This type of direct behavioral observation is rarely available in child pornography cases. Magistrates are often unable to say whether images were actually viewed or whether files were deliberately acquired or simply washed over the transom with other lawful images. Indeed, in this case, the appellant argued that the Government couldn't show whether or how many times the images found in the portable hard drive were viewed. In contrast, the witness here described the appellant's behavior, lingering over some images and returning to others repeatedly. Even after viewing the images, the appellant's suspicious behavior leaving the restaurant and upon being detained indicated consciousness of guilt. Following the *Leedy* court's admonition to "apply common sense and practical considerations in reviewing probable cause determinations," 65 M.J. at 217, we are convinced that, based solely upon the information that was available to the magistrate at the time, there was more than a fair probability that investigators would find child pornography in the appellant's backpack.

Applying the standard of review applicable under existing precedent, we uphold the military judge's finding that the appellant voluntarily consented to the search of his dormitory room and conclude that the search authorization for the appellant's backpack was valid. This assignment of error is without merit.

### 3. Good faith exception to the exclusionary rule

Applying the same abuse of discretion standard of review, we also uphold the military judge's finding that, even if the search authorization were defective, the good faith exception to the exclusionary rule would apply to both the search of the backpack and the search of the dormitory room.

In *United States v. Leon*, the Supreme Court established a good faith exception to the exclusionary rule in cases where the official executing the warrant relied on the magistrate's probable cause determination and the technical sufficiency of the warrant, and that reliance was objectively reasonable. 468 U.S. 897, 922 (1984).

The good faith exception under the Military Rules of Evidence is set out in Mil. R. Evid. 311(b)(3):

Evidence that was obtained as a result of an unlawful search or seizure may be used if:

(A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;

(B) The individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and

(C) The officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith shall be determined on an objective standard.

Notwithstanding Mil. R. Evid. 311(b)(3), the evidence may not be admitted if any of four circumstances enumerated in *Leon* apply:

(1) False or reckless affidavit—Where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) Lack of judicial review—Where the magistrate "wholly abandoned his judicial role" or was a mere rubber stamp for the police;

(3) Facially deficient affidavit—Where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; [or]

(4) Facially deficient warrant—Where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Carter*, 54 M.J. 414, 419–20 (C.A.A.F. 2001) (quoting *Leon*, 468 U.S. at 923).

In this case, the military judge accurately identified and applied the law, and as a result, we uphold his ruling unless his findings of fact were clearly erroneous or unsupported by the record.

The military judge reasonably found that the verbal information provided to the magistrate was not false or misleading. AFOSI's characterization of the witness's description accurately relayed the testimony provided by the witness during the hearing and his stipulation offered at trial. The appellant invites us to find that the information was misleading "because the affiant withheld a critical fact that any reasonable magistrate would have wanted to know-namely, that Appellant was never observed looking at illegal images." We find that argument unconvincing on these facts because, unlike cases where an image is available at the time of application for the warrant, there was insufficient information to reasonably determine whether the images depicted a lascivious exhibition of the genitals. While hindsight reveals that the images were not illegal, the military judge's focus on the accurate conveyance of the witness's observations, rather than the absence of a legal characterization of the images was reasonable.

We also find the military judge's determination that the magistrate did not abandon his judicial role to be supported by the evidence. The magistrate testified that he had disagreed with the legal office on other matters in the past, and the military judge found that testimony credible. He also noted that, when provided hypothetical facts during the motion hearing, he testified that he would not have authorized a search under those circumstances. Although there was testimony indicating that the magistrate did not assertively probe the subject matter of the photos, that evidence is insufficient to find the military judge's conclusion to be clearly erroneous.

The judge's determination that the verbal information provided to the magistrate was not facially defective is also supported by the evidence. As discussed above, the information supporting the search need not rule out the possibility that the images were lawful child erotica. The witness's observation of the appellant viewing images of naked children, in combination with his description of the appellant's behavior, were sufficient to support the military judge's finding on this aspect of the good faith exception.

Finally, the military judge's determination that the search authorization itself was not facially defective was supported by at least some evidence. The AFOSI agent testified that, based upon his training and experience, the appellant was likely to have similar images on media in his dormitory room. The military judge ultimately found that there was an insufficient basis for this conclusion. However, that finding is not inconsistent with the military judge's determination that the agents reasonably relied on the authorization. As the military judge observed in his ruling, the magistrate was called upon to make a timely decision based upon information that was, due to the circumstances, incomplete. Although in the cold light of later review he found that decision flawed, it was still a reasonable conclusion at the time, and AFOSI's good faith

reliance on the flawed authorization was also reasonable. We cannot say, based upon these facts, that the military judge's determination was clearly erroneous or unsupported by the record.

Since the military judge properly applied Mil. R. Evid. 311(b)(3), as informed by *Leon* and *Carter*, and his findings of fact were not clearly erroneous, we uphold his ruling that even in the absence of probable cause, the good faith exception to the exclusionary rule would have applied and the evidence obtained through the search of the backpack and dormitory room would have been admissible.

*Failure to Define "Access" and "Intent to View"*

The appellant contends the military judge improperly instructed the panel when he failed to define the terms "access" and "intent to view." These words appear in one of the specifications which alleged the appellant "knowingly and wrongfully access[ed] child pornography with an intent to view, to wit: visual depictions of minors engaging in sexually explicit conduct." Trial defense counsel did not request an instruction at trial.

Whether a panel was properly instructed is a question of law reviewed de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). However, where counsel fails to object to omission of an instruction at trial, we review the military judge's instruction for plain error. *Id.*; *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013); R.C.M. 920(f).[9] If plain error exists, the burden shifts to the Government to show that the error was harmless beyond a reasonable doubt. *See United States v. Brewer*, 61 M.J. 425, 430 (C.A.A.F. 2005); *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011). The military judge has an independent duty to instruct the members correctly and fully on all issues raised by the evidence. *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981).

The appellant has not met his burden of demonstrating error. The appellant offers no evidence or argument to suggest that "access" or "intent to view" are not commonly understood terms generally, or under the specific circumstances of this case. Instead, he argues that the military judge's decision to provide definitions of other arguably commonly understood terms created a duty on the part of the military judge to, despite the lack of objection, intuit that these words should be defined as well. That argument simply proves too much. Not every word in a specification requires definition, even when the word is essential to an element of the offense. *See United States v. Glover*, 50 M.J. 476, 478 (C.A.A.F. 1999).

---

[9] Although we recognize that the rule describes this as "waiver," this is in fact forfeiture. *See United States v. Sousa*, 72 M.J. 643 (A.F. Ct. Crim. App. 2013).

The appellant also contends that the military judge erred when he admitted Prosecution Exhibit 17 under Mil. R. Evid. 404(b) over defense objection. Prosecution Exhibit 17 was originally comprised of 1,388 images recovered from the appellant's electronic devices. Most of the images were recovered using forensic tools that are not generally available or methods that are not commonly known to the standard computer user, but some were found in the recycle bin where they could be retrieved by a user. Some of the images appear to be child pornography while others appear to be lawful child erotica. The Government argued to the military judge that the images were not offered to prove that the appellant had the propensity to commit the charged offenses, but rather that the possession of these additional images tended to show that the appellant had the requisite intent to possess, access or receive child pornography rather than obtaining it by mistake. The Government maintained that theory throughout the trial. The military judge granted the defense motion with the exception of any images found in the recycle bin which related to one of the children depicted in Prosecution Exhibits 1 through 16 (which served as the basis for two specifications in the case). On appeal, the appellant contends that the military judge erred by admitting those images.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). We will not overturn a military judge's ruling unless it is "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous,'" *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)), or influenced by an erroneous view of the law. *Id.* (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

The test for admissibility of evidence showing uncharged misconduct is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006) (quoting *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989)) (internal quotation marks omitted). Such permissible purposes include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Mil. R. Evid. 404(b).

We review the admissibility of uncharged misconduct under Mil. R. Evid. 404(b) using the three-part test articulated in *United States v. Reynolds*:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?

2. What fact of consequence is made more or less probable by the existence of this evidence?

3. Is the probative value substantially outweighed by the danger of unfair prejudice?

29 M.J. 105, 109 (C.M.A. 1989) (citations, quotation marks, and ellipses omitted).  The military judge applied this test in reaching his ruling below.  Because the judge properly applied the law, we review his ruling to see if it was arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

The military judge's determination that the evidence reasonably supported a finding that the appellant possessed the images in the portable hard drive's recycle bin folder was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.  Prior to ruling on the motion, the military judge heard expert testimony to establish whether the appellant, rather than some other user, acquired or possessed the images.  The expert testified that, while he could not exclude the possibility that someone else accessed the computer, the review of Internet history did not indicate anyone else used the computer.  He also testified that an average user could access files found in the recycle bin folder without specialized tools.  He testified that the desktop computer found in the appellant's dormitory room contained link files showing that the portable hard drive was accessed from that computer.  The military judge could reasonably have found that the expert's testimony, in conjunction with the accused's possession of the devices, would reasonably support a finding that the appellant possessed the images admitted as Prosecution Exhibit 17.

We also conclude that the military judge's determination that the images tended to prove a fact of consequence was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.  Our superior court has cited, with approval, a decision by the United States Court of Appeals for the Third Circuit holding that in a prosecution for possession of child pornography, images of "child erotica," while legal to possess, may nonetheless be admitted to show intent to commit the charged offense.  *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) (citing *United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010)).  This court has also observed that long precedent establishes "possession of [child erotica] can satisfy the second *Reynolds* prong, in that this evidence can tend to indicate knowledge of the nature of the contraband material and negate the possibility that the files were downloaded by accident or mistake."  *United States v. Suwinski*, ACM 38424, unpub. op. at 5–6 (A.F. Ct Crim. App. Nov. 20, 2014) (citing *United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (allowing subscriptions "to numerous e-groups described as nude teen sites" as evidence of knowing possession of child pornography), *rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004); *United States v. Mann*, 26 M.J. 1, 2–4 (C.M.A. 1985) (providing that possession of magazines were admissible to prove the accused's intent to satisfy his sexual desires); *United States v. Rhea*, 29 M.J. 991, 998 (A.F.C.M.R. 1990) (providing that possession of books describing sexual exploitation of young girls was probative of motive), *set aside on*

*other grounds*, 33 M.J. 413 (C.M.A. 1991); *United States v. Lips*, 22 M.J. 679, 682 (A.F.C.M.R. 1986) (holding that possession of graphically posed photographs showing women being sexually abused was a clear indication of the appellant's penchant for sexual aberration)).

Finally, we find that the military judge's determination pursuant to Mil. R. Evid. 403 that the probative value of the images ultimately admitted was not substantially outweighed by the danger of unfair prejudice was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. The military judge limited the Government to admission of only exhibits found in the portable hard drive's recycle bin folder that depicted a child that was also depicted in one of the charged images. While the existence of the other images was prejudicial, in that it increased the total number of images presented to the members, it was not unfairly prejudicial in that it was narrowly tailored to the charged offenses and the proper purpose under Mil. R. Evid. 404(b).

Since none of the military judge's determinations were arbitrary, fanciful, clearly unreasonable, or clearly erroneous, and the military judge applied the proper legal standard, we find that the military judge did not abuse his discretion and reject this assignment of error.

### *Instructions Concerning Evidence Admitted under Mil. R. Evid. 404(b)*

Next, the appellant argues that the military judge erred when his instructions failed to instruct the panel members concerning Mil. R. Evid. 404(b) and how to properly consider Prosecution Exhibit 17. Mil. R. Evid. 105 places the burden for requesting a limiting instruction squarely on the parties. Failure to object to the omission of an instruction constitutes waiver of the objection, absent plain error. R.C.M. 920(f). Since trial defense counsel did not request a limiting instruction or object to its omission, the issue is forfeited absent plain error. *See United States v. Powell*, 49 M.J. 460, 463 (C.A.A.F. 1998); *Sousa*, 72 M.J. 643, 651 (A.F. Ct. Crim. App. 2013). We do not find plain error.

The failure of the military judge to provide a limiting instruction was not error. Although at one time, our case law required military judges to provide such instructions without regard to any request by the parties, that requirement was generally limited to circumstances where there was a weak nexus between the uncharged misconduct and the charged offense. *See United States v. Dagger*, 23 M.J. 594, 597–98 (A.F.C.M.R. 1986). Even that requirement, however, was eliminated with the adoption of Mil. R. Evid. 105. *See* Drafter's Analysis, *Manual for Courts Martial, United States*, A22-3 (2012 ed.) (Stating that Mil. R. Evid. 105 overrules previous cases insofar as they require the military judge to give limiting instructions sua sponte). Although we could envision a case where trial counsel's examination of a witness or argument might give rise to a duty upon the military judge to cure any misunderstanding as to the permissible uses of evidence admitted for a limited purpose, that is not the case here. On the contrary, trial

counsel was exceptionally careful to make clear that Prosecution Exhibit 17 was only being offered to show the appellant's intent or absence of mistake. On these facts, we find no error by the military judge in failing to give a limiting instruction.

Even if we found error, it would not have been plain error. Trial defense counsel sometimes choose not to request a limiting instruction to avoid emphasizing the evidence in question. *See United States v. Maynard*, 66 M.J. 242, 245 (C.A.A.F. 2008). In this case, one of the primary contentions of trial defense counsel was that the Government failed to prove the intentional possession of the images found in the appellant's recycle bin folder. It would be reasonable for trial defense counsel to want to avoid having the military judge personally remind the members that they could consider Prosecution Exhibit 17 in deciding whether the appellant had the requisite intent to commit the offenses alleged. The existence of this reasonable basis for not wanting a limiting instruction negates any suggestion that the need for one was plain or obvious.

*Whether Prosecution Exhibit 12 Constitutes Child Pornography*

The appellant asserts his convictions for possession and receipt of child pornography must be set aside because Prosecution Exhibit 12 offered in support of the specifications is not child pornography and is constitutionally protected. The appellant's assertion, without any meaningful analysis of the applicable legal factors used to determine whether the image was constitutionally protected, is unconvincing. This issue is without merit.

In deciding whether an image offered in support of a general verdict is constitutionally protected, we apply the general standards of review for factual and legal sufficiency. *See United States v. Piolunek*, 72 M.J. 830, 835 (A.F. Ct. Crim. App. 2013). We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Moreover, "[i]n resolving legal-sufficiency questions, [we are] bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991); *see also United States v. Young*, 64 M.J. 404, 407 (C.A.A.F. 2007).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of

cross-examination. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

In this case, the appellant concedes that the image depicts the child's genitals, so the only question is whether the depiction is lascivious under *United States v. Roderick*, 62 M.J. 425, 429–30 (C.A.A.F. 2006). In *Roderick*, our superior court held that we "determine whether a particular photograph contains a 'lascivious exhibition' by combining a review of the [factors set out in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986)] with an overall consideration of the totality of the circumstances." *Roderick*, 62 M.J. at 430. The *Dost* factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 429.

Prosecution Exhibit 12 depicts a prepubescent girl, clad only in a tank top. She is posed sitting on a couch with one knee up and her legs spread open. This composition places the focal point of the picture on her genitals. Her head is posed such that she looks sideways at the camera with one hand on the back of her neck. This pose, in conjunction with her facial expression, suggests sexual coyness and is unnatural for a girl of her age. Her lack of any garment below the waist is also inappropriate for her age. The composition alone suggests that the image was designed to elicit a sexual response, and that suggestion is reinforced by other charged images that were part of the same collection. [10] Under *Roderick*, we consider the totality of the circumstances of the offense along with the *Dost* factors. The plainly lascivious nature of the other files in the same collection corroborates the inference that the image was intended to elicit a sexual response. We need not, and specifically decline to consider any of the images contained

---

[10] The prosecution computer forensic expert testified that Prosecution Exhibits 4–7 and 12–14 were found in a single folder in the portable hard drive's recycle bin folder and that entries in the system database on the desktop computer indicated that the files were all obtained as a single collection.

in Prosecution Exhibit 17, since our analysis of this depiction focuses on the intent of those that crafted it, rather than the appellant's state of mind.

We find that the image, when viewed in the light most favorable to the prosecution was legally sufficient to support a finding of guilt. We also conclude beyond a reasonable doubt, based upon our own factual sufficiency review, that the image constitutes a lascivious exhibition of the genitals. We find no support for the assertion that the findings should be disapproved on this basis.

### Failure to Follow Reconsideration Instructions

The appellant asserts that "the court members failed to follow the military judge's instructions on voting procedures." This assertion is based on a comment in an e-mail response to trial defense counsel's request to the members for post-trial feedback.[11] One member commented in his response "the second charge had to be revoted on in order to be found guilty." During the trial, the panel never reconvened in open session to discuss reconsideration as directed by the military judge's procedural instructions. Trial defense counsel raised this issue to the military judge in a post-trial motion for appropriate relief.

A military judge's decision regarding a motion for a mistrial will be reviewed for an abuse of discretion. *See United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003); *United States v. Dancy*, 38 M.J. 1, 6 (C.M.A. 1993). In determining whether to investigate or question court members about a verdict, the trial court maintains wide discretion, and the trial court's decision will be reviewed for an abuse of that discretion. *United States v. Lambert*, 55 M.J. 293, 295–96 (C.A.A.F. 2001).

The military judge issued a well-reasoned written ruling noting, among other things: Mil R. Evid. 923 and 606(b); applicable case law in *United States v. Brooks*, 42 M.J. 484 (C.A.A.F. 1995), and *United States v. Bobby*, 61 M.J. 750 (A.F. Ct. Crim. App. 2005); and the important policy objective of protecting the sanctity of court-martial deliberations even when evidence of procedural irregularities exists. For the reasons set out in the military judge's ruling, we find this argument to be without merit.

### Government Counsel Sentencing Argument

The appellant also argues that the sentencing argument by trial counsel was improper. We review the propriety of argument de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011).

In his sentencing argument, trial counsel rhetorically asked "[a]nd why is this particular crime so serious? Because it propagates the abuse of children, as

---

[11] Although requests for feedback can be problematic, this particular request was coordinated with the Chief Regional Military Judge and included appropriate reminders of members' obligation to maintain the confidentiality of their deliberations.

sexual . . .", at which point trial defense counsel objected on the basis that the argument asserted facts not in evidence. The military judge overruled the objection, stating that the comment was a reasonable inference. Trial counsel completed his thought, stating: "It propagates the sexual abuse of children. That's why this crime is serious." Trial counsel then proceeded to other aspects of his argument.

The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused. *See United States v. Lutes*, 72 M.J. 530, 535 (A.F. Ct. Crim. App. 2013); *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). It is improper for trial counsel to seek unduly to inflame the passions or prejudices of the sentencing authority. *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983). Counsel should limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Baer*, 53 M.J. at 237. During sentencing argument "trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting *Baer*, 53 M.J. at 237) (internal quotation marks omitted). Whether or not the comments are fair must be resolved when viewed within the context of the entire court-martial. *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001).

We are not convinced that the argument was erroneous. Deconstructing trial counsel's argument, it consisted of two assertions: that the appellant propagated something, and what he propagated was the sexual abuse of children. There is no question that the explicit sexual acts depicted in the videos and images constitute abuse under any fair meaning of the term. There's also no question that the abuse was sexual in nature.

The question, therefore, turns on the meaning of propagate as used here. Webster's dictionary sets out two general meanings for the word propagate: to multiply (especially as it relates to plant or animal reproduction and heredity) and to spread out or publicize. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 935 (10th ed. 1999). Although the appellant apparently attributes the first meaning to trial counsel's argument, the second meaning is equally valid and more apt on these facts.[12] The abuse inherent in child pornography is not just the act depicted but also the future vulnerability the victims face by the continued proliferation of the images. *See Lutes*, 72 M.J. at 536 ("[T]he children portrayed in the materials possessed by the appellant could fear their images will be forever available for individuals like the appellant to download and possess"). The Government's computer expert testified about the way in which these files were

---

[12] Courts have sustained arguments that consumption of child pornography, by its nature, creates the demand for such images that perpetuates the abuse depicted. *See United States v. Forney*, NMCCA 200200462, unpub. op. at 16 (N.M. Ct. Crim. App. 19 July 2005) (sentencing argument "reflect[ed] the realities of child pornography, simply, that so long as there is a demand for such depictions, children will continue to be abused."); *United States v. Hadley*, ACM 35930, unpub. op. at 4 (A.F. Ct. Crim. App. 16 February 2006) ("[S]uch victimization is part of the 'black market industry' the appellant, through his conduct, was 'perpetuating and feeding.'"). We need not reach this issue since an equally valid meaning was well supported by the evidence.

transmitted and shared over the Internet. While one could debate whether continued dissemination of the images multiplies the abuse suffered, such dissemination clearly spreads that abuse to a wider audience. We agree with the military judge that trial counsel's argument was a reasonable inference from the evidence.

*Merger of Specifications for Sentencing*

Next, the appellant argues that the military judge abused his discretion when he denied the appellant's motion to merge the specifications in his case for sentencing purposes. We review a military judge's decision to deny relief for unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).

The specifications that were ultimately under consideration during sentencing were substantially different from the five specifications originally referred to trial and on which the appellant was arraigned. These five specifications included three specifications of wrongful possession of visual depictions of minors engaging in sexually explicit conduct. The specifications differed only in respect to the media alleged—one concerning the portable hard drive, one concerning the desktop computer, and one concerning the laptop computer. Prior to the entry of pleas, the convening authority withdrew the possession specifications that related to the desktop and the laptop computers.

The remaining three specifications were renumbered. Specification 1 alleged the appellant knowingly and wrongfully possessed child pornography on a Hitachi external hard drive. Specification 2 alleged that he knowingly and wrongfully accessed child pornography with an intent to view it. Specification 3 alleged that he knowingly and wrongfully received child pornography.

At the close of findings, the military judge determined the receipt and possession specifications covered the same conduct and therefore dismissed the greater offense for Specification 3 (receipt of child pornography). He concluded:

> Given the way that the evidence has played out and the law on possession and receipt of these particular images, what I have determined is that the receipt and possession really duplicate and go towards the same conduct. However, as trial counsel has requested the lesser-included offense of attempted receipt, I do find that there's evidence that remains that the members could in fact find attempted receipt.

The lesser included offense referred to by the military judge was based on the existence of evidence of incomplete downloads of files distinct from those found on the portable hard drive. The prosecution expert testified that a user of the appellant's laptop

initiated peer-to-peer downloads of files with names indicative of child pornography. Those file names were also listed in Prosecution Exhibit 21. The Government offered this theory of liability during closing argument. The revised Specification 3 alleging the lesser included offense of attempted receipt of child pornography went to the members, who found the appellant guilty of that offense.

In determining whether charges constitute an unreasonable multiplication of charges, we consider five non-exhaustive factors: whether the appellant objected at trial, whether each charge and specification is aimed at distinctly separate criminal acts, whether the number of charges and specifications misrepresent or exaggerate the appellant's criminality, whether the number of charges and specifications unreasonably increase the appellant's punitive exposure, and whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges. *See United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).

We consider whether the appellant objected at trial to determine whether the issue is fairly brought under our Article 66(c), UCMJ, authority, not to determine whether it was preserved in the technical sense. *See id.* Although much of the underlying basis for the appellant's pretrial motion was rendered moot by the changes discussed above, that motion was sufficient to bring the matter under our Article 66(c) authority. Rather than applying a strict interpretation of forfeiture and preservation of error, we assess whether, under the circumstances, we should consider approving something less than the findings and sentence approved by the convening authority as relief for unreasonable multiplication of charges. In this case, the appellant's motion for relief, as pursued throughout the trial, is sufficient to justify our review under Article 66(c).

The changes in the specification also make clear that the misconduct alleged in the specifications that resulted in a conviction addressed distinctly separate criminal acts. The specification alleging accessing child pornography with an intent to view was plainly directed at Prosecution Exhibits 1 through 16, while the specification alleging attempted receipt was directed at the incomplete downloads indicated by Prosecution Exhibit 21. These are unquestionably distinctly separate acts.

We also find that the specifications do not misrepresent or exaggerate the appellant's criminality. Had the military judge not granted the appellant's motion with regard to access and receipt of the same images, we would have to consider whether two theories of liability for the same images exaggerate the appellant's culpability for sentencing. Those circumstances were not present in this case. The appellant invites us to construe the appellant's actual and attempted access to child pornography as one continuing course of conduct. We decline to do so when, as here, the acts occurred not only at different times, but on completely different continents. Repeated access to child pornography on different occasions, in different locations, on different devices, is simply not analogous to a series of blows constituting a single assault.

While the existence of two specifications in this case increases the appellant's punitive exposure, it does not do so unreasonably. We first note that the specifications were drafted to encompass misconduct on divers occasions rather than charging each image or incomplete download separately. Generally speaking, that type of charging strategy decreases, rather than increases punitive exposure. *Campbell*, 71 M.J. at 25. Additionally, the acts at issue in the specification alleging attempted receipt of child pornography, as narrowed by the military judge and argued by both parties, would not have been legally sufficient to prove actual access to those files. The only way to put that behavior before the members was to retain distinct specifications for sentencing.

Finally, we discern no evidence of prosecutorial overreaching or abuse in the drafting of the charges. Indeed, the Government's dismissal of two of the charges prior to entry of pleas suggests just the opposite—that the Government pursued only those specifications justified by the evidence.

We are convinced that the military judge did not abuse his discretion by refusing to merge the two specifications for sentencing.

*Addressing Raised Legal Error in SJAR Addendum*

The appellant also argues that this court should remand the case for a new convening authority action because the staff judge advocate's recommendation (SJAR) failed to discuss the alleged voting irregularity which was raised as legal error in the appellant's clemency submission.

Proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error. Rule for Courts-Martial 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65) (internal quotation marks omitted). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least some "colorable showing of possible prejudice in terms of how the [perceived error] potentially affected [his] opportunity for clemency." *Id.* at 437.

R.C.M. 1106(d)(4) states:

> The staff judge advocate or legal officer is not required to examine the record for legal errors. However, when the recommendation is prepared by a staff judge advocate, the staff judge advocate shall state whether, in the staff judge

advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate. The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required.

Despite this plain language, the appellant argues that the addendum failed to "properly [characterize] Appellant's allegations of legal errors and/or [provide] analysis of the legal errors."

Although the addendum did not explicitly state agreement or disagreement with the asserted legal error, it did state, "I also reviewed the attached clemency matters submitted by the defense. I recommend you approve the findings and sentence as adjudged." We find no meaningful difference between "I recommend you approve the findings and sentence as adjudged" and "in my opinion, no corrective action should be taken." Although more substantial explanation would not have been inappropriate, the SJAR addendum complies with R.C.M 1106(d)(4), and we find no error, plain or otherwise.

Even if we found the absence of further discussion constituted error, we would find no prejudice on these facts. Based upon the staff judge advocate's (SJA's) ultimate recommendation to approve the findings and sentence as adjudged, any further discussion would have only reinforced his position that no corrective action was necessary. The convening authority indicated in his indorsement to the addendum that he considered the appellant's clemency materials, which included the assertion of the voting irregularity. The convening authority adopted the SJA's recommendation and approved the findings and sentence as adjudged. We find no colorable basis to conclude the convening authority would have acted any differently had the SJA expanded upon his reasons for recommending exactly what the convening authority ultimately did. This assertion of error is without merit.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38443